UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

*Filed Electronically*

CRIMINAL ACTION NO. 5:23-CR-029-DCR

UNITED STATES OF AMERICA                                                      PLAINTIFF

V.                    **SENTENCING MEMORANDUM**

CHASE DOWNEY                                                                   DEFENDANT

\* \* \* \* \*

Comes the Defendant, Chase Downey, by and through undersigned counsel, and respectfully submits this sentencing memorandum in support of his request for a downward variance in his sentence below the sentencing guidelines calculated by the Presentence Report. This memorandum is submitted pursuant to 18 U.S.C. § 3553(a), which directs the Court to consider the history and characteristics of the Defendant and the nature and circumstances of the offense, among other factors, to fashion a sentence that is sufficient, but not greater than necessary to comply with the goals set forth in the statute.

The following memorandum seeks to address the factors set forth in the applicable statutes and sentencing guidelines for this Honorable Court to consider in sentencing Mr. Downey in this matter.

Mr. Downey acknowledges the criminality, seriousness, and depth of his actions. While Mr. Downey disputes the veracity and effect of much of the evidence stated at trial, he does acknowledge that he engaged in criminal activity and is remorseful for the harm that he has caused others as a consequence of his actions. He acknowledges that his intentions were selfish but maintains that they were not malicious.

Mr. Downey was dealt a difficult situation from his birth. His father's absence from the home contributed to his desire to have a better life and an urgency for same that led him into poor decisions. Without a father in the home daily, Mr. Downey was often placed into a situation where he was the man of the house by default. This was not a role that he was prepared for, and his lack of maturity left him vulnerable to negative outside influences.

This situation was further worsened by his use of illicit drugs at a young age. Some of this use began as early as his young teenage years as evidenced by the presentence report.

Looking back, it also appears evident that Mr. Downey may have suffered from some mental health issues at a younger age. However, those issues went undiagnosed and untreated for a significant amount of time. It was not until he was incarcerated in Ohio that he was seen by a psychiatrist. Unfortunately, he did not follow through with the doctor's recommendations.

Mr. Downey now understands the negative impact that his long-term addictions and failure to seek or abide by psychiatric treatment has contributed to his poor decision-making throughout his life and would implore this Honorable Court to recommend a sentence that would allow for placement in a facility that provides such treatment to him during his period of incarceration.

While Mr. Downey's relationship with his father falls short of ideal, he has always and continues to have a very healthy and positive relationship with his mother and his siblings. These are the people that love and support him and have continued to do so throughout his ups and downs in life. These are relationships that Mr. Downey holds dear and would request that this Court please consider the necessity of these relationships to his ability to move forward in life in a positive manner.

Additionally, while Mr. Downey has previously served a substantial amount of time in prison during his life, his BOP record does evidence the fact that Mr. Downey has worked and completed several programs while incarcerated. This is proof that Mr. Downey truly has the desire to improve himself and his decision-making in his life. He wants this not only for his own benefit but also for those who love and support him. He understands that his decision-making has been the cause of many sleepless nights, worried days, and trauma and he desperately wants to change that into giving his loved ones a sense of renewed pride and peace.

Moving forward to the calculation of the applicable guideline range set forth in the PSR, Mr. Downey would also like the court to consider supplemental information to the

objections made previously to the PSR and the responses provided by the Office of Probation.

First, paragraph 10 of the PSR indicates that 322 grams of methamphetamine should be attributable to Mr. Downey. Probation elaborates further by citing to USSG §2D1.1. While this section is appropriate for purposes of evaluating drug quantities, it is improperly applied as to Mr. Downey in this case. This is because some of the pills themselves were contaminated with a green powder prior to testing. Additionally, the pills were different in color and physical makeup (different shapes and sizes). The one pill that was tested was tested simultaneously with the green powder as if they were one item. While the testing of that one pill with green powder came back positive for the presence of methamphetamine, the lab expert could not reliably state that the one pill tested nor any of the other untested pills contained methamphetamine. On cross-examination, the lab specialist stated that, "I'm not going to test an orange one, a purple one, and a green one individually. I can't say that the meth might not be coming from the green powder. And I can't clean them off, so it's not fair to you as the defendant, for me to test them and say, oh, yes, meth was found in all of them when they're contaminated." Therefore, without sufficient evidence as to the source of the methamphetamine that triggered a positive test result being reliably identified as the green powder, the pills as a whole, or a particular type of pill, there is an insufficient basis upon which to make a finding that the attributable amount of methamphetamine should be set at 322 grams.

Further in paragraph 27, the Probation Office seeks to enhance the guidelines by two additional levels for maintaining a premises for the manufacture or distribution of controlled substances. However, pursuant to the guidelines set out in 2D1.1(b)(12), the enhancement should not apply to Mr. Downey for several reasons. First, there are no factual bases for a finding that Mr. Downey used the premises to manufacture or distribute controlled substances. Additionally, while drugs were located at the residence, there was no evidence to suggest that this was his primary purpose during his limited use of the residence. Finally, Mr. Downey did not have any possessory interest in the property, nor did he control access to or activity on the premises.

This position is also related to Mr. Downey's argument regarding the firearms located in the residence. Mr. Downey maintains that there was not sufficient evidence provided upon which to find that the firearms were his. Additionally, Mr. Downey argues that even if some form of ownership could be found, pursuant to <u>Bailey v. U.S., 516 U.S. 137, 116 S. Ct. 501 (1995)</u>, "Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession." Further, sufficient evidence as to the time in which the guns were placed at the residence or if they had any connection to any drug activity was provided. Finally, Mr. Downey maintains that the proof did not support a finding that the firearms were not found to be within arm's length of the pills. In fact, at trial, the testimony indicated that the investigators were unsure as to the exact location of the case containing the weapons upon their arrival.

In looking at the guideline calculations, Mr. Downey maintains that the guidelines are not calculated properly in the PSR. However, if this Honorable Court determines that

5

the Probation Office's calculations are appropriate, he requests that the Court consider a variance on his behalf.

Additionally, Mr. Downey maintains that he does not qualify as either a career offender or Armed Career Criminal pursuant to the guidelines and thus, his minimum sentence on these convictions should be 20 years. However, if the Court does determine that Mr. Downey does meet the criteria for either designation, this minimum is raised to 30 years.

Mr. Downey understands that he is not eligible for a sentence below the mandatory minimum pursuant to the guideline calculations that the Court adopts and therefore requests that the Court consider granting him the minimum sentence upon his convictions. Such a sentence will also be subject to potential further consequences from the Ohio state court that he will ultimately face following the sentence in this matter.

Even at its lowest possible outcome, Mr. Downey will be subject to decades in prison. Such a sentence will provide protection for the public as well as serve as a substantial deterrent to both Mr. Downey and the general population. Such a sentence will also place a penalty on Mr. Downey that potentially guarantees his incarceration until nearly the age of retirement for most, at which point he will be subject to prolonged supervised release and left to face a world that he does not recognize.

Mr. Downey, convictions do not tell the complete story of who he is as a man. They do not erase his potential or his worth. Mr. Downey can make a difference in his life even if much of it is spent in prison. He is committed to making the next chapters of his life beneficial for himself and those that he encounters. He humbly asks that this Honorable

Court consider a sentence in line with the minimum contemplated by the law under these circumstances. Such a sentence would be just, substantial, and no more than necessary to effectuate the purposes of the guidelines and applicable statutes related to his sentencing.

      Mr. Downey thanks the Court for the patience, grace, and careful consideration of his requests.

      Respectfully Submitted,

/s/Rawl Douglas Kazee, Esq.
149 N. Limestone
Lexington, KY 40507
Telephone: (859) 684-9113
rawlkazee@yahoo.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion has been filed electronically with the Court on this the 25th day of March 2024 to notify all parties of docket activity. A copy of the foregoing Objections has also been furnished to Hon. Roger West via email.

      /s/Rawl Douglas Kazee, Esq.